UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IQL-RIGGIG, LLC D/B/A IQ LOGIC and GOT DOCS, LLC, | ) ) ) No. 19 CV 6155 |
| Plaintiffs, | ) ) ) |
| v. | ) Magistrate Judge Young B. Kim ) |
| KINGSBRIDGE TECHNOLOGIES, KINGSBRIDGE HOLDINGS, LLC, FRANK MENDICINA, and AMF6 SOLUTIONS LLC, | ) ) ) ) ) ) March 29, 2021 |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Before the court is Defendant Kingsbridge Holdings, LLC's ("Kingsbridge") motion to compel Respondent Meilinger Consulting's ("Meilinger") compliance with a subpoena. For the following reasons, Kingsbridge's motion is denied:

**Background**

Plaintiff IQL-RIGGIG, LLC, formerly known as Riveria MCS, LLC ("Riveria"), and its principal owners, Edward Gibson and Tarang Gupta, filed this lawsuit on behalf of Plaintiff Got Docs, LLC ("Got Docs"), alleging they are Got Docs's majority owners and managers. (R. 129, Pl.'s LR 56.1 Resp. ¶¶ 54, 56-57.) Kingsbridge contests Riveria's ownership interest in Got Docs based on Riveria's 2017 tax returns as well as other documents and communications. (R. 185, Kingsbridge's Mem. at 3.) Based on this view, on July 29, 2020, Kingsbridge filed a motion for summary judgment with respect to Got Docs's claims. (R. 103.) On September 4, 2020, Riveria

hired Meilinger, an accounting firm, to prepare and file Riveria's second amended 2017 tax returns. (R. 185, Kingsbridge's Mem. at 4.) Relying on the amended tax returns, Riveria filed its opposition to the summary judgment motion on September 9, 2020. (Id. at 6.)

On December 2, 2020, Kingsbridge served a subpoena on Meilinger seeking all materials concerning Riveria and Got Docs. (Id.) Meilinger in response produced the final second amended tax returns and related emails two weeks later. (Id.) However, Meilinger partially or wholly redacted most of the emails it produced. (Id.) On January 8, 2021, Meilinger provided Kingsbridge a privilege log and removed some of the previous redactions from these emails. (Id. at 8). For information Meilinger withheld, it asserts the attorney-client privilege, work-product immunity, and/or Federal Rule of Civil Procedure 26(b)(4). (R. 189, Meilinger's Opp. Br.[1] at 6-11.) Meilinger categorizes the withheld information as follows: (1) emails between Meilinger and Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins")—the law firm representing Riveria, Gupta, and Gibson in this case; (2) emails between Nelson Mullins attorneys about Kingsbridge's counterclaim and summary judgment motion; and (3) emails between Gupta, Gibson, and Nelson Mullins on the same issue. (Id. at 3.) Kingsbridge now seeks an order compelling Meilinger to produce the withheld information.

---

[1] Got Docs, Riveria, Gibson, and Gupta joined Meilinger in the opposition brief.

**Analysis**

Kingsbridge moves to compel Meilinger to produce unredacted versions of the emails produced in response to its subpoena, arguing that no privilege or immunity shields the disclosure of such information. (R. 185, Kingsbridge's Mem.) Meilinger responds that such information is protected by the attorney-client privilege, the work-product doctrine, and Rule 26(b)(4), as set forth in its privilege log. The court addresses in turn each privilege or immunity Meilinger asserts.

**A.  Attorney-Client Privilege**

Kingsbridge argues that Meilinger improperly withheld responsive information under the attorney-client privilege. (R. 185, Kingsbridge's Mem. at 9.) The attorney-client privilege protects a communication: (1) between a client and attorney; (2) made in confidence; (3) for the purpose of obtaining legal advice. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008). The Seventh Circuit does not recognize an accountant-client privilege, *Valero v. United States*, 569 F.3d 626, 630 (7th Cir. 2009), but has explained that material an attorney sends to or receives from an accountant may qualify for protection under the attorney-client privilege if the accountant acts as the attorney's agent in rendering legal advice. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000).

For the attorney-client privilege to attach to communications between an attorney and an accounting service, the purpose of the communications must be to seek and render legal advice, not accounting services. *Id.* An accountant's

3

preparation of tax returns qualifies as an accounting service, not a legal service. *Id.* Likewise, documents used both to prepare tax returns and to advance a party's interests during litigation are not privileged. *Id.*; *see also Valero*, 569 F.3d at 630. When assessing whether the attorney-client privilege applies to communications to or from an accounting service, the Seventh Circuit has regarded the engagement letter as the "most important piece of evidence." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2010).

In this case, the engagement letter between Meilinger and Nelson Mullins states that Meilinger was retained to provide "tax preparation" for Riveria's "2017 amended federal and CA partnership and income tax returns." (R. 189-1, Meilinger's Opp. Br. Ex. A at 2.) Similarly, emails between Meilinger and Nelson Mullins show that Meilinger's work was limited to the preparation of tax returns. (R. 182, Emails Between Nelson Mullins and Meilinger at 1-47.) Because tax preparation services are accounting services, communications relating to those services are not protected under the attorney-client privilege. *See In re Grand Jury Proceedings*, 220 F.3d at 571 (holding that documents used to prepare tax returns are not privileged, even if used in litigation). Thus, the "most important piece of evidence" suggests that the attorney-client privilege does not apply to the information Meilinger redacted. *Sandra T.E.*, 600 F.3d at 619. The court nonetheless addresses each category of documents for which Meilinger asserts the attorney-client privilege to determine whether the privilege in fact attaches.

4

For the emails between Meilinger and Nelson Mullins regarding this litigation, (Meilinger_000001-000188, Meilinger_000191, Meilinger_000193-204, and Meilinger_000222-224), Kingsbridge argues that the attorney-client privilege does not apply because they concern Meilinger's preparation of tax returns, which constitutes an accounting service, not a legal service. (R. 185, Kingsbridge's Mem. at 9.) Kingsbridge is correct that the privilege attaches only when the purpose of a communication is to obtain legal advice, rather than to obtain accounting services. *See In re Grand Jury Proceedings*, 220 F.3d at 571. The burden is on Meilinger as the party invoking the attorney-client privilege to establish that the privilege applies. *See Shaffer v. AMA*, 662 F.3d 439, 446 (7th Cir. 2011). Meilinger asserts that the subject correspondence "relat[es] to the defense of a counterclaim and summary judgment motion that involves preparation of tax returns." (R. 189, Meilinger's Opp. Br. at 3.) But Meilinger does not provide any evidence showing that the purpose of its email correspondence with Nelson Mullins was to obtain legal advice rather than accounting services. The attorney-client privilege therefore does not attach to the emails between Meilinger and Nelson Mullins. *See In re Grand Jury Proceedings*, 220 F.3d at 571; *Valero*, 569 F.3d at 630.

As to the emails between Nelson Mullins attorneys regarding work performed by Meilinger, (Meilinger_000193-195), the attorney-client privilege does not attach. The attorney-client privilege only applies to communications between a client and an attorney, or the attorney's agent. *Judson*, 529 F.3d at 388; *In re Grand Jury Proceedings*, 220 F.3d at 571. Communications between attorneys at the same firm

5

may qualify for the attorney-client privilege only if they reflect privileged information relating to communications to or from the client. *Nedlog Co. v. ARA Servs.*, 131 F.R.D. 116, 118 (N.D. Ill. 1989). Here, neither Meilinger nor Nelson Mullins has demonstrated that the subject emails relate to privileged communications to or from a client. In its privilege log, Meilinger asserts only that the correspondence was "between plaintiffs' attorneys regarding the subject litigation," but Meilinger does not establish that the correspondence includes any information to or from any of its clients (Riveria, Gupta, or Gibson). (R. 181-3, Meilinger Priv. Log at 1.) In opposition to the motion, Meilinger attempts to shift the focus away from whether the attorney-client privilege applies in the first instance by focusing on whether it has waived the privilege. (See R. 189, Meilinger's Opp. Br. at 7 (contending that "the forwarding of emails. . . does not destroy or waive the [attorney-client] privilege").) But without showing that the privilege applies, focusing on waiver amounts to putting the cart before the horse. Accordingly, the attorney-client privilege does not protect emails exchanged between Nelson Mullins attorneys regarding Meilinger's services.

With respect to the emails between Gupta, Gibson, and Nelson Mullins about this litigation, (Meilinger_000207-208), Meilinger has established that the attorney-client privilege attaches. Meilinger describes in its privilege log the subject emails as emails "between attorney and client litigant" concerning "legal issue[s] in the subject litigation." (R. 181-3, Meilinger Priv. Log at 1.) Based on this representation, Meilinger demonstrates that the subject communications were in fact transmitted between Gupta and Gibson and their Nelson Mullins attorneys for purposes of

6

seeking legal advice. Specifically, Meilinger asserts that the emails "concern[ed] the defense of the counterclaim." (R. 189, Meilinger's Opp. Br. at 3.) Accordingly, emails between Gupta, Gibson, and Nelson Mullins, (Meilinger_000207-208), qualify for protection under the attorney-client privilege.

**B.     Work-Product Doctrine**

Kingsbridge also argues that Meilinger improperly withheld responsive documents under the work-product doctrine. (R. 185, Kingsbridge's Mem. at 11-12.) The work-product doctrine, as the Seventh Circuit has explained, "protects documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case." *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). Therefore, the work-product doctrine protects "party, and not just attorney, preparation." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000.) The doctrine shields from disclosure two types of work: (1) an attorney's thought processes and mental impressions; and (2) an attorney's fact-finding investigation. *Sandra T.E.*, 600 F.3d at 622. Accordingly, the work-product doctrine "shelters the mental processes of the attorney" so she can "analyze and prepare [her] client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

Like the attorney-client privilege, the party asserting the work-product doctrine bears the burden of showing that the disputed documents were prepared because of the prospect of litigation. *Binks Mfg. Co. v. Nat'l Presto Indus. Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983). The Seventh Circuit has yet to apply the work-product doctrine to tax-related communications, but the First, Second, and Sixth

7

Circuits have done so. The First Circuit declined to extend the work-product doctrine to "tax accrual work papers" prepared by lawyers in a company's tax department for the purpose of calculating tax reserves for the company's financial statement. *See United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 22 (1st Cir. 2009). In so ruling, the First Circuit explained that the work-product doctrine applies to tax documents prepared in anticipation of litigation but not to such documents prepared in the "ordinary course of business" or to such documents that "would have been created in essentially similar form irrespective of the litigation." *Id.* at 30.

By contrast, the Second Circuit applied the work-product doctrine to a tax memorandum created by a tax firm that a company had retained when seeking legal advice before restructuring. *Schaeffler v. United States*, 806 F.3d 34, 37 (2d Cir. 2015). The tax memorandum "identified potential U.S. tax consequences of the refinancing and restructuring, identified and analyzed possible IRS challenges to the [company's] tax treatment of the transactions, and discussed in detail the relevant statutory provisions, U.S. Treasury regulations, judicial decisions and IRS rulings." *Id.* at 38. Accordingly, because the tax memorandum in *Schaeffler* discussed the "attorney's litigation strategies" and appraised the likelihood of success in litigation, the Second Circuit concluded that this memorandum qualified for work-product immunity from disclosure. *Id.* at 45.

Similarly, the Sixth Circuit confirmed that the work-product doctrine attaches to memoranda from a tax consulting firm to a company that includes "dense legal analysis of current tax law, including arguments and counter-arguments in certain

8

areas of law that the memoranda argue are unsettled." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). The tax firm's memoranda expressed "detailed legal analysis of the strengths and weaknesses of [the company's] position" and reflected "legal conclusions throughout." *Id.* at 595. The court therefore afforded work-product doctrine immunity to the subject memoranda.

In arguing that the work-product doctrine does not protect the emails between Meilinger and Nelson Mullins about this litigation, Kingsbridge initially argues that the emails Meilinger prepared cannot reflect attorney work product. (R. 185, Kingsbridge's Mem. at 11-12.) However, the work-product doctrine does not require an attorney to author the communications, but rather also protects communications prepared by an attorney's agent. *See Smith*, 502 F.3d at 689; *Caremark*, 195 F.R.D. at 616. Meilinger has established that the emails between Meilinger and Nelson Mullins were exchanged in anticipation of litigation, as both parties agree that Riveria hired Meilinger to prepare amended tax returns for purposes of litigating this case. (R. 185, Kingsbridge's Mem. at 6); (R. 189, Meilinger's Opp. Br. at 8); *see Binks*, 709 F.2d at 1120. Furthermore, for emails reflecting "opinion work product of counsel" that "involved the thought process behind defending the Counterclaim and the Motion for Summary Judgment," (R. 181-3, Meilinger Priv. Log at 1); (R. 189, Meilinger's Opp. Br. at 3), such correspondence may also include legal analysis, legal conclusions, or counsel's litigation strategy of the type that the Second and Sixth Circuits have concluded invoke protection under the work-product doctrine. *See Schaeffler,* 806 F.3d at 45; *Roxworthy,* 457 F.3d at 594. At the court's request,

9

Meilinger submitted the emails exchanged between Meilinger and Nelson Mullins, (Meilinger_000001-000188, Meilinger_000191, Meilinger_000193-204, Meilinger_000222-224), to the court for *in camera* review. Having reviewed these emails, the court finds that the work-product doctrine applies.[2]

Concerning the emails between Nelson Mullins attorneys about claims or defenses litigated in this case, Kingsbridge argues that even if work-product immunity protected them, Nelson Mullins waived such protection by forwarding the emails to Meilinger. (R. 185, Kingsbridge's Mem. at 12.) There is little doubt that, at least in the first instance, the work-product doctrine applies to internal Nelson Mullins emails about the pending litigation. Meilinger has established that the subject emails were exchanged in anticipation of litigation, as the work-product doctrine requires, because Meilinger represents in its privilege log that the "email communication between plaintiffs' attorneys regard[ed] the subject litigation." (R. 181-3, Meilinger Priv. Log at 1); *see Binks*, 709 F.2d at 1120. Specifically, Meilinger asserts in its opposition brief that the email correspondence between Nelson Mullins attorneys related to "defending the Counterclaim and the Motion for Summary Judgment," which demonstrates that the communication was made in anticipation of litigation. (R. 189, Meilinger's Opp. Br. at 2.)

Kingsbridge argues, however, that Nelson Mullins waived work-product doctrine protection when it forwarded the emails between Nelson Mullins attorneys

---

[2] Many of these emails do not appear to reflect any information that is relevant to the issues in this case.

10

to Meilinger. (R. 185, Kingsbridge's Mem. at 12.) For support, Kingsbridge relies on the Seventh Circuit's decision in *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999). In *Frederick*, the court found that "if the client transmitted the information [to a tax preparer] so that it might be used on the tax return, such a transmission destroys any expectation of confidentiality." *Id.* Insofar as Nelson Mullins forwarded information to be used in tax returns, *Frederick* instructs that any expectation of confidentiality has been destroyed. *Id.* Such information must be disclosed to Kingsbridge. But to the extent that the information sent pertains to "opinion work product of counsel," as the privilege log indicates for certain documents, *Frederick* does not apply and Kingsbridge's work-product waiver argument is inapplicable. At the court's request, Meilinger submitted the emails exchanged between Nelson Mullins attorneys, (Meilinger_000193-195), to the court for *in camera* review. Having reviewed them, the court finds that the work-product doctrine applies to all of these emails.

For the emails between Gupta, Gibson, and Nelson Mullins about this litigation, Kingsbridge again argues that the work-product doctrine cannot apply. (R. 185, Kingsbridge's Mem. at 12.) As an initial matter, Meilinger has established that the emails were exchanged in anticipation of litigation, as the work-product doctrine requires, because Meilinger's privilege log shows that they discuss "the legal issue in the subject litigation." (R. 181-3, Meilinger Priv. Log at 1); *see Binks*, 709 F.2d at 1120. But unless an attorney or an attorney's agent prepared the documents, the work-product doctrine does not apply. *Smith*, 502 F.3d at 689 (noting that the

11

work-product doctrine protects "documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case"). Based on Meilinger's privilege log, it appears that the only email between Gupta, Gibson, and Nelson Mullins was authored by Gupta and directed to a Nelson Mullins attorney. (R. 181-3, Meilinger Priv. Log at 1.) As such, a Nelson Mullins attorney or the attorney's agent did not prepare the communication, as required, but instead merely received the communication. *See Smith*, 502 F.3d at 689. Accordingly, the work-product doctrine does not protect the email from Gupta to Nelson Mullins. But, as explained above, emails between Gupta, Gibson, and Nelson Mullins qualify for protection under the attorney-client privilege, and the court does not find any evidence that such protection was waived.

### C. Rule 26(b)(4)(D)

Kingsbridge did not address Meilinger's argument that Rule 26(b)(4)(D) precludes disclosure of the subpoenaed information. Under Rule 26(b)(4)(D), "a party may not, *by interrogatories or deposition*, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation." *Id.* (emphasis added). This rule protects a party's expert from having to respond to discovery requests if the expert's work product includes facts or opinions developed in anticipation of litigation. *White v. Electrolux N. Am., Inc.*, No. 13 CV 1617, 2014 WL 1365424, at *3 (N.D. Ill. April 7, 2014) (permitting plaintiff to depose defendant's expert where defendant did not prove that Rule 26(b)(4)(D) applied to the expert's report). The Seventh Circuit has noted that Rule 26(b)(4)(D) is "simply an

application of the work product rule," because the Rule extends work-product protection to an expert's facts or opinions sought through interrogatories or deposition. *Appleton Papers v. EPA*, 702 F.3d 1018, 1024 (7th Cir. 2012). As with the work-product doctrine, the party invoking Rule 26(b)(4)(D) bears the burden of establishing that the expert was retained or specially employed in anticipation of litigation. *Id*. Here, this rule is not applicable at this time because Kingsbridge subpoenaed the materials and did not serve interrogatories on Got Docs, or subpoena Meilinger for a deposition.

## Conclusion

For the foregoing reasons, the motion is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

13