IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Got Docs, LLC, and IQL-RIGGIG, LLC, | ) | |
| f/k/a Riveria MCS, LLC, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 19 C 6155 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| Kingsbridge Holdings, Inc., Frank Mendicina, | ) | |
| and AMF6 Solutions, LLC, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, IQL Riggig, LLC (f/k/a Riveria MCS, LLC), Edward Gibson, and Tarang Gupta's motion for judgment on the pleadings as to Counts I and III of the counterclaim by Frank Mendicina and AMF6 Solutions is denied, and Kingsbridge's motion to dismiss Counts 13 (conversion) and 17 (civil conspiracy) [120] of the second amended complaint is granted.

## STATEMENT

The Court assumes familiarity with the facts and the Court's prior orders.

**A.      Motion for Judgment on the Pleadings**

Counterclaim defendants IQL Riggig, LLC (f/k/a Riveria MCS, LLC), Edward Gibson, and Tarang Gupta (collectively, "Riveria") move for judgment on the pleadings as to Counts I and III of the counterclaim by Frank Mendicina and AMF6 Solutions (collectively, "Mendicina").

A motion for judgment on the pleadings under Federal Rule of Civil Procedure ("Rule") 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) ("The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same."). Thus, to survive a motion for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In Count I of the counterclaim, Mendicina seeks a declaratory judgment regarding the parties' rights and legal relationship under the Got Docs operating agreement ("Operating Agreement"). Riveria argues that Count I fails because (1) it repackages Mendicina's affirmative defense as a claim and thus serves no purpose; and (2) declaratory judgment and

injunctive relief are remedies, not stand-alone claims. Mendicina clarifies in its response that Count I of the counterclaim is broader in scope than the affirmative defense. Specifically, both Count I of the counterclaim and the second defense assert that Riveria forfeited its 60% ownership interest in Got Docs and that AMF6 now owns 100% of Got Docs and Mendicina is the sole manager of Got Docs. However, Count I further states that if Riveria did not forfeit its 60% ownership interest, then AMF6 remains a 40% owner of Got Docs. The second defense, however, is based on the premise that AMF6 is 100% owner of Got Docs. Moreover, while the second defense can result only in the dismissal of Got Docs' claims in this case, Mendicina asserts that Count I seeks broader relief in that it asks the Court to enjoin Riveria, Gibson, and Gupta from taking *any* actions on behalf of Got Docs, not just prosecuting the instant lawsuit. Because the second defense and Count I of the counterclaim do not entirely overlap, the Court sees no basis to dismiss Count I of the counterclaim as duplicative of the second defense. *See Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014) ("Because Defendant's counterclaim seeking a cancellation of Plaintiff's mark based upon fraud may potentially afford Defendant different or additional relief than a finding of invalidity alone, the claim is not duplicative of Defendant's trademark invalidity defense.").

Riveria's second contention—that Count I must be dismissed because declaratory judgment and injunctive relief are remedies, not stand-alone claims—also fails. Parties routinely invoke the Declaratory Judgment Act to clarify the parties' rights and obligations in a contract. *Auto-Owners Ins. Co. v. Osborn Homes, Inc.*, No. 14-CV-1308-SMY-PMF, 2015 WL 5118128, at *2 (S.D. Ill. Aug. 28, 2015) ("A request to construe the language of a contract to apprise the parties of their legal rights falls within the scope of the Declaratory Judgment Act."). "[I]f issuing a declaratory judgment 'will clarify and settle the legal relations at issue and afford parties relief from insecurity and uncertainty, the declaratory judgment action is usually heard.'" *Id*. at 1038 (citation omitted). Riveria also argues that Mendicina's request for declaratory judgment "serves no useful purpose and is redundant of the substantive litigation." The Court has the discretion to entertain a request for declaratory judgment, and it chooses to do so here; the Court will make a determination on the request for declaratory relief at the time it decides the substantive claims before it. *See In re JPMorgan Chase Bank Home Equity Line of Credit Litig.*, 794 F. Supp. 2d 859, 877 (N.D. Ill. 2011) ("The decision to entertain a declaratory judgment action lies within the discretion of the district court and is not precluded by the availability of another form of relief.") (citations omitted).

In Count III of the Counterclaim, Mendicina alleges breach of contract, gross negligence, and willful misconduct. Riveria initially argues that this claim is a "misnamed claim for tortious breach of an implied fiduciary duty," which is subject to a three-year statute of limitations and, therefore, time-barred under Nevada law. *See* Nev. Rev. Stat. § 11.190(3). In its response to the motion for judgment on the pleadings, however, Mendicina characterizes the claim as one for "breach of the[] contractual obligations under the Got Docs operating agreement to act in good faith and deal fairly and to avoid gross negligence and willful misconduct." (Defs.' Br. Opp'n, Dkt. # 259, at 8.)

The Operating Agreement states that it is governed by Nevada law. However, "as to procedural matters, the law of the forum controls, and in Illinois, '[s]tatutes of limitations are procedural, merely fixing the time in which the remedy for a wrong may be sought, and do not

alter substantive rights.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018) (citation omitted). The Illinois statute of limitations for breach of contract is ten years. 735 ILCS 5/13–206. But "Illinois law includes a borrowing statute that prevents litigants from pursuing claims in Illinois courts that would have been barred by the statute of limitations in the state where the claim accrued." *Art Akiane LLC v. Art & SoulWorks LLC*, No. 19 C 2952, 2021 WL 4206786, at *5 (N.D. Ill. Sept. 16, 2021) (citing 735 ILCS 5/13-210). The only law the parties discuss in the breach-of-contract context other than Illinois is Nevada's, so the Court assumes for purposes of this motion that the claim accrued in Nevada, which has a six-year statute of limitations for breach-of-contract claims. *See* Nev. Rev. Stat. § 11.190.1(b). According to Mendicina, because the counterclaim's allegations suggest that Count III accrued in December 2017, "when Got Docs went out of business and [Mendicina's] ownership interest in Got Docs became worthless because of Counterclaim Defendants' mismanagement of Got Docs in breach of their contractual duties," and Mendicina filed the counterclaim in March 2021, Count III is timely. To the extent there is a dispute as to when the claim accrued and its resolution depends on facts outside of the pleadings, it is not proper for a ruling on the current record. This basis for relief is denied.

Riveria then raises numerous other arguments in its reply brief, including that judgment should be entered as to Counts I and III of the counterclaim because Gibson, Gupta, and Mendicina are not parties to the Operating Agreement, and the Operating Agreement does not impose the claimed obligations. Arguments raised for the first time in a reply brief are waived and will not be considered by the Court. *Wonsey v. City of Chi.*, 940 F.3d 394, 398 (7th Cir. 2019).

**B.      Motion to Dismiss**

Defendant Kingsbridge Holdings, LLC ("Kingsbridge") moves pursuant to Rule 12(b)(6) to dismiss Counts 13 (conversion) and 17 (civil conspiracy) of Plaintiffs' second amended complaint as asserted by Riveria.[1]

Riveria alleges that Kingsbridge converted Riveria's alleged ownership interest in Got Docs by "stealing" its business. Specifically, Riveria alleges as follows:

> In addition to Kingsbridge's wrongful and without[-]authorization acquisition and assumption of control over [Got Docs'] entire business, Kingsbridge wrongfully and without authorization deprived [Riveria] of its equity interest in [Got Docs], and caused [Riveria] to suffer economic loss including but not limited to its lost monetary investment in [Got Docs], the fair market value of its controlling equity interest in [Got Docs], and related consequential damages.

---

[1] Riveria contends the motion should be styled as a motion for judgment on the pleadings and not a motion to dismiss for failure to state a claim. Regardless of how the motion is characterized, the Court must accept Riveria's well-pleaded allegations as true and draw all reasonable inferences in its favor when assessing the motion.

(2d Am. Compl., Dkt. # 63, ¶ 219.)  Riveria also alleges that "Kingsbridge wrongfully and without authorization acquired and assumed control, dominion, or ownership of [Got Docs'] entire business including its trade secrets, executives, employees, accounts, books and records, sales pipeline, customers, contracts, business partners, receivables, intellectual property, and goodwill."  (*Id.* ¶ 215.)

Kingsbridge argues that Riveria cannot base a conversion claim on the alleged "theft" of Got Docs's trade secrets, executives, employees, accounts, and books and records, among other things, because the second amended complaint alleges that Got Docs, not Riveria, owned these items. *See, e.g., Champion Signs LLC v. Dee Sign Co.*, No. 13-CV-196-BEN JLB, 2014 WL 2860269, at *7-9 (S.D. Cal. June 20, 2014) ("Champion cannot bring this claim on its own behalf.  It is undisputed that the funds allegedly converted belonged to the Company. Champion's interest in the LLC gives it a stake in the outcome of a conversion claim, but it does not mean that Champion possessed, or had an immediate right to possession of the Company's funds.").  The Court agrees.  The paragraphs Riveria cites in support of its contention that it was deprived of the named items (¶¶ 85, 86, and 105) refer only to Got Docs's ownership, not Riveria's.  The only other paragraph Riveria cites, ¶ 219, refers to its *equity interest* in Got Docs, not any possessory interest in Got Docs's trade secrets, executives, employees, accounts, etc. Therefore, the motion to dismiss the conversion claim as it relates to Got Docs's trade secrets, executives, employees, accounts, and books and records, among other things, is granted.

With respect to Riveria's equity interest in Got Docs, Kingsbridge asserts that Riveria's alleged ownership interest in Got Docs is an intangible right and "Illinois courts do not recognize an action for conversion of intangible rights." *Am. Nat. Ins. Co. v. Citibank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008).[2]  Riveria asserts, however, that the conversion claim is not governed by Illinois law.  According to Riveria, "the state with the most significant relation to a claim is usually the state in which the tort (and therefore the injury) occurred." *Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009).  At the time of the alleged theft, Riveria, a private equity firm, was a Delaware limited liability company.  Its sole investment was Got Docs, a Nevada limited liability company that was headquartered in California.  Without analyzing which state has the most significant relationship to the conversion claim, Riveria asserts that both Delaware and California permit conversion actions for intangible property, and thus, its claim based on the conversion of its ownership interest survives the motion to dismiss. (Pls.' Resp., Dkt. # 138, at 5 (citing *Bamford v. Penfold, L.P.*, No. 2019-0005-JTL, 2020 WL 967942, at *22 (Del. Ch. Feb. 28, 2020) (permitting claim for the conversion of an LLC interest and explaining the national trend); *Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003) (California "courts routinely apply the tort [of conversion] to intangibles"); *FMC Corp.*, 915 F.2d at 302 (employing Illinois

---

[2] Riveria notes that some Illinois courts have recognized that an interest in intangible property can be converted.  *See, e.g., J & J Sports Prods. Inc. v. Ward*, No. 10-CV-193-JPG, 2010 WL 4781140, at *4 (S.D. Ill. Nov. 17, 2010) (collecting cases where "several Illinois appellate courts have held that a claim for conversion exists with respect to intangible property") (citing *FMC Corp. v. Cap. Cities/ABC, Inc.*, 915 F.2d 300, 305 (7th Cir. 1990) ("[T]here is perhaps no very valid and essential reason why there might not be conversion of intangible property.")).  But because Riveria argues that the conversion claim is not governed by Illinois law, the Court does not address this issue.

choice-of-law analysis to apply California law to conversion claim because the plaintiff felt the loss most in California)).)

Kingsbridge agrees that Delaware and California courts have recognized a conversion claim involving an equity interest, but only when the interest is no longer held by the plaintiff and has been taken by the defendant. (Def.'s Reply, Dkt. # 145, at 7 (citing *McGowan v. Ferro*, 859 A.2d 1012, 1040 (Del. Ch. 2004) ("To prove conversion of an equity interest in an entity, a plaintiff must show cancellation or transfer of the shares in question . . . ."); *see also Bamford*, 2020 WL 967942, at \*23 (finding that plaintiffs stated a conversion claim against defendant because they alleged that they no longer had their membership interests when defendant "obtained their membership interests in [the relevant company] through fraud"); *Perry v. Neupert*, No. CV 2017-0290-JTL, 2019 WL 719000, at \*25 (Del. Ch. Feb. 15, 2019) (defendant converted plaintiff's ownership interest in LLC by turning LLC into a new corporation and purporting to issue all of new corporation's shares to a foundation instead of to plaintiff); *Hardisty v. Moore*, 6 F. Supp. 3d 1044, 1065 (S.D. Cal. 2014) (plaintiff transferred his 27% membership interest in LLC to the defendant)).)

Kingsbridge contends that because Riveria alleges that it owns Got Docs and that Kingsbridge did not obtain Riveria's ownership interest in Got Docs, Kingsbridge cannot have converted Riveria's ownership interest. Specifically, Kingsbridge notes that Riveria alleges in the second amended complaint that it "is the sole member of Got Docs." (2d Am. Compl., Dkt. # 63, ¶ 3.) Moreover, in its response to Kingsbridge's motion for summary judgment, Riveria asserts that it "is still a member of Got Docs," and that it has a "continued membership interest in Got Docs." (Pls.' Consol. Opp'n, Dkt. # 127, at 4-5.) Thus, under Delaware and California law, which Riveria contends is controlling with respect to the conversion claim, Kingsbridge cannot have converted Riveria's ownership interest in GotDocs because Riveria alleges that it still maintains one. Accordingly, the motion to dismiss the conversion claim as it relates to Riveria's ownership interest in GotDocs is granted.[3]

As to the civil conspiracy claim, Riveria agrees with Kingsbridge that if there is no underlying tort (here, conversion), then the Court can dismiss the civil conspiracy claim. (Pls.' Opp'n Defs.' Mot. Dismiss, Dkt. # 138, at 4.) Accordingly, the motion to dismiss the civil conspiracy claim is granted.

**Date**: October 7, 2021

_____
**Ronald A. Guzmán**
**United States District Judge**

---

[3] Because the Court has granted the motion to dismiss the conversion claim, the Court need not address Kingsbridge's alternative argument that the conversion claim fails on the ground that it is derivative.