IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Got Docs, LLC, and IQL-RIGGIG, LLC, f/k/a Riveria MCS, LLC,<br>      Plaintiffs,<br>      v.<br>Kingsbridge Holdings, LLC, Frank Mendicina, and AMF6 Solutions, LLC,<br>      Defendants. | No. 19 C 6155<br><br>Judge Ronald A. Guzmán |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendants' motion for summary judgment [273] is granted in part and denied in part.

**STATEMENT**

**Background**

*Parties.* Plaintiffs Got Docs, LLC, d/b/a IQ Logic ("Got Docs") and IQL-RIGGIG, LLC, formerly known as Riveria MCS, LLC ("Riveria")[1] bring the instant suit against Defendants Kingsbridge Holdings, LLC ("Kingsbridge"), AMF6 Solutions LLC ("AMF6"), and Frank Mendicina ("Mendicina"), the sole member of AMF6.[2] Generally, Plaintiffs allege that after leaving the employment of Got Docs, Mendicina joined Kingsbridge and "stole" Got Docs' business, including its clients, contracts, proprietary information, and employees. Many of the facts offered in support of Plaintiffs' allegations are in dispute.

*Managed Print Services.* Xerox and other manufacturers make and sell print devices (e.g., printers, copiers, and multifunction devices) and provide service and supplies for the devices, both directly and through their respective networks of authorized dealers. Xerox's managed print service ("MPS System") involves two primary components, a sales component and a service component, and functions through a suite of software programs that Xerox developed and provides to its dealers. Under the sales component of Xerox's MPS System, Xerox or its authorized dealer analyzes a customer's usage of its existing print devices and recommends how the customer can increase efficiency and save money when the customer is ready to replace its existing print devices with new ones. Under the service component of Xerox's MPS System, Xerox and its dealers use

---

[1] The Court refers to the plaintiffs as "Got Docs" and "Plaintiffs" interchangeably.

[2] There is also a pending counterclaim by Edward Gibson, who claims to be the majority owner/member of Riveria, and Tarang ("TJ") Gupta, who claims to be an owner/member of Riveria. The parties have previously engaged in substantial motion practice with respect to the counterclaims, which are not at issue here.

the Xerox software tools to continuously monitor and support a customer's print devices and provide service and supplies (e.g., toner) for the devices on a regular basis. With the service component, a Xerox dealer enters into service contracts with its customers and typically enters into a contract with Xerox to provide the actual service and supplies to the customers on the dealer's behalf. If the dealer fails to pay Xerox and becomes sufficiently in arrears, Xerox places the dealer on a "supply hold," meaning that the dealer's customers no longer receive service or supplies for their print devices (and, eventually, their print devices will not function) until the dealer pays Xerox.

*Got Docs*. Got Docs was founded by Mendicina and AMF6 in 2012. It was an authorized Xerox dealer that primarily sold Xerox print devices and service and supplies using Xerox's MPS System. IQ Connect was a "vendor-agnostic" proprietary software platform created by Got Docs that was similar to Xerox's software but, according to Got Docs, had other capabilities. IQ Connect was cloud-based and housed at Amazon Web Services. Got Docs contracted with Xerox to provide service and supplies to Got Docs' customers. Got Docs states that it did not work with Xerox exclusively.

In November 2015, Riveria and AMF6 became the two owners/members of Got Docs, with Riveria owning 60% and AMF6 owning 40%. As of November 2015, the Board of Managers of Got Docs consisted of Gibson, Gupta, and Mendicina. Effective November 18, 2015, Riveria and AMF6 entered into an Amended and Restated Limited Liability Company Agreement of Got Docs, LLC ("Operating Agreement"), which is governed by Nevada law. On the same date, Got Docs and Mendicina entered into an employment agreement ("Employment Agreement"), which is governed by California law, pursuant to which Mendicina was named Got Docs' Chief Executive Officer.

On August 10, 2017, Gibson told Mendicina that Got Docs was "at a stand still in terms of paying people or making any progress," and on August 11, 2017, Mendicina resigned as President and CEO of Got Docs. In the fall of 2017, Got Docs failed to pay Xerox for servicing and supplies it provided to Got Docs' customers on behalf of Got Docs. Accordingly, in November 2017, Xerox stopped providing service and supplies to Got Docs' customers, and GotDocs ceased operations in or around December 2017. In mid-January 2018, Xerox terminated Got Docs as an authorized dealer.

A few days after Mendicina left Got Docs, Kingsbridge hired him to form a new division called Kingsbridge Technologies, through which Kingsbridge became an authorized Xerox dealer. After Got Docs ceased operations and had its phone service discontinued, Kingsbridge acquired Got Docs' former phone number from the phone service provider. At some point after Mendicina joined Kingsbridge (the date is disputed), Kingsbridge developed its own software interface called BridgeConnect. Between August 2017 (when Mendicina joined Kingsbridge) and December 2017 (when Got Docs ceased operations), Kingsbridge Technologies was just beginning operations and had no significant sales or revenues. Kingsbridge hired several Got Docs salespeople at various times between August and November 2017. It is undisputed that after Got Docs and Xerox stopped providing service and supplies to Got Docs' customers, some of those customers contacted Kingsbridge, which attempted to provide those customers with service and supplies at Kingsbridge's expense and with no assurance of an ongoing relationship. In late January 2018,

Xerox formally allowed Kingsbridge to take over servicing of Got Docs' customers that were willing to switch to Kingsbridge.

Plaintiffs allege 17 counts against Defendants as follows: Count 1--Tortious Interference with Contract (IQ Logic[3] v. Kingsbridge); Count 2--Tortious Interference with Prospective Economic Advantage (IQ Logic v. Kingsbridge); Count 3--Breach of the Mendicina Employment Agreement[4] (IQ Logic v. Mendicina); Count 4--Tortious Interference with Mendicina Employment Agreement (IQ Logic v. Kingsbridge); Count 5--Breach of the IQ Logic Operating Agreement (IQ Logic v. Mendicina and AMF6 Solutions); Count 6--Tortious Interference with the IQ Logic Operating Agreement (IQ Logic v. Kingsbridge); Count 7--Unfair Competition under the Lanham Act (IQ Logic v. Kingsbridge); Count 8--Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 (IQ Logic v. Kingsbridge); Count 9--Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (IQ Logic v. Kingsbridge); Count 10--Trade Secret Misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA") (IQ Logic v. Kingsbridge and Mendicina); Count 11--Trade Secret Misappropriation under the Illinois Trade Secrets Act, 765 ILCS 1065 ("ITSA") (IQ Logic v. Kingsbridge and Mendicina); Count 12--Copyright Infringement (IQ Logic v. Kingsbridge); Count 13--Conversion (IQ Logic and IQL Riggig v. Kingsbridge); Count 14--Unjust Enrichment (IQ Logic v. Kingsbridge); Count 15--Breach of Fiduciary Duty (IQ Logic v. Mendicina); Count 16--Aiding and Abetting Breach of Fiduciary Duty (IQ Logic v. Kingsbridge); Count 17--Civil Conspiracy (IQ Logic and IQL Riggig v. Kingsbridge and Mendicina). The state-law claims are variously raised under Nevada, California, or Illinois law, as identified in the relevant discussion of the claims.

Defendants move for summary judgment on all counts.

**Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chi.*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted).

---

[3] IQ Logic is Got Docs' "doing business as" name. While the Court generally refers to Got Docs or Plaintiffs in this memorandum opinion and order, the Court sets forth the counts as stated in the Second Amended Complaint.

[4] The Employment Agreement provides that California law governs. (2d Am. Compl., Dkt. # 63, Ex. A, § 15.) The Operating Agreement provides that it is governed by Nevada law, (*id.*, § 11.4)

3

**Analysis**

The Court first addresses the federal-law claims: copyright infringement and violation of the Defend Trade Secrets Act ("DTSA").

<u>Copyright Infringement (Count 12)</u>

Defendants assert that they are entitled to summary judgment on Got Docs' copyright infringement claim because "there is no evidence that [Kingsbridge] copied Got Docs' website or website content."[5] (Defs.' Mem. Law Supp. Mot. Summ. J., Dkt. # 274, at 12.) Got Docs responds with "overlooked facts" it sets forth in a table covering Counts 12 through 16 and from which Got Docs asserts a "reasonable jury could return a verdict" for Got Docs. The table contains only one section addressing the copyright infringement claim, which states that "Got Docs managers testified to personal knowledge that Defendants copied [GotDocs'] website, [a] developer of [the] copycat site testified regarding Kingsbridge's directives, and the similarities between the sites are apparent upon visual comparison." (Pls.' Resp. Opp'n Defs.' Mot. Summ. J., Dkt. # 284, at 11) (citing Pls.' Resp. Defs.' Stmt. Facts ¶ 52.) Both parties' discussions of the copyright claim are perfunctory at best. Neither side sets forth the elements of a copyright infringement claim nor provides anything more than a passing reference to the claim or the relevant facts. Due to Defendants' perfunctory argument on this claim, the motion for summary judgment on the copyright infringement claim is denied. Even if the Court were to address Defendants' motion on the claim, it would not succeed.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 886 (7th Cir. 2021). The copying element "actually encompasses two distinct questions, . . . . [t]he first question is whether, as a factual matter, the defendant copied the plaintiff's protected work (as opposed to independently creating a similar work); the second question is whether the copying 'went so far as to constitute an improper appropriation.'" *Id*. at 887 (citation omitted). "The first of these subsidiary elements—let's call it 'actual copying' or 'copying in fact'—can be proved either directly or indirectly." *Id*. "A circumstantial case of actual copying requires: (1) evidence that the defendant had access to the plaintiff's copyrighted work (enough to support a reasonable inference that the defendant had an *opportunity* to copy); and (2) evidence of a substantial similarity between the plaintiff's work and the defendant's work (enough to support a reasonable inference that copying *in fact* occurred)." *Id*. (emphasis in original). Ordinarily, "to prove a circumstantial case of copyright infringement, the plaintiff must separately prove both access and similarity." *Id*. at 888. Defendants argue that there is no proof of access (i.e., "there is no evidence that [Kingsbridge] copied Got Docs' website or website content") or similarity (i.e., "Got Docs has no proof of 'substantial similarity' and thus, has no proof of copyright infringement because: (a) it failed to produce a copy of the websites so that they can be compared; and (b) under the best evidence rule, Got Docs cannot rely on testimony to prove the content of the websites."). (Defs.' Mem. Law Supp. Mot. Summ. J., Dkt. # 274, at 12; Defs.' Reply Mem., Dkt. # 288, at 12.)

---

[5] The parties do not discuss whether the websites or website content are copyrightable; the Court assumes for purposes of this motion that they are.

Plaintiffs' only rebuttal to Defendants' argument is to point to Plaintiffs' response to Defendants' statement of fact number 52. In that statement of fact, Defendants assert that "Kingsbridge did not use, copy, or misappropriate Got Docs' website or website content." (Defs.' Stmt. Facts, Dkt. # 276, ¶ 52.) Plaintiffs dispute this contention, pointing to the deposition testimony of Peter Loebbecke, who "was involved in the design and maintenance of IQ Logic's website," (Loebbecke Dep., Dkt. # 286, Page 8 of 135, at 38), and created Kingsbridge Technologies' first website, (*id*., Page 9 of 135, at 71); thus, Plaintiffs point to evidence of access. As to similarity, Defendants assert that Plaintiff failed to produce a copy of the websites "so that they can be compared." Plaintiffs, however, point to Loebbecke's Deposition Exhibit 10, which depicts two webpages, one from IQ Logic's website and one apparently from Kingsbridge's website. The full extent of Plaintiffs' argument[6] is that "[t]he similarities . . . in design and content are undeniable." (Pls.' Resp. Defs.' Stmt. Facts, Dkt. # 283, ¶ 52.) While the webpages appear to have some similarities, whether they rise to the level of copyright infringement is unclear, and Defendants make no effort to demonstrate that copyright infringement has not occurred. Because a genuine issue of fact exists as to whether Defendants infringed Plaintiffs' copyrighted material, summary judgment on the copyright infringement claim is denied.

DTSA and ITSA (Counts 10 and 11)

"The DTSA authorizes '[a]n owner of a trade secret that is misappropriated' to bring a civil suit under federal law." *Chroma Cars, LLC v. Harris*, No. 3:21-CV-825 DRL-MGG, 2022 WL 1686530, at *3 (N.D. Ind. May 25, 2022). To establish a violation of the DTSA or ITSA,[7] Plaintiffs must prove that "'(1) a trade secret existed; (2) it was misappropriated through improper acquisition, disclosure, or use; and (3) the misappropriation damaged the trade secret's owner.'" *Westrock Co. & Victory Packaging, LP v. Dillon*, 21-CV-05388, 2021 WL 6064038, at *6 (N.D. Ill. Dec. 22, 2021) (citations omitted).

As to the first element, Defendants contend in a footnote that the IQ Connect software application does not qualify as a trade secret.[8] "Under both [DTSA and ITSA], whether information qualifies as a trade secret is a question of fact that 'requires an ad hoc evaluation of all the surrounding circumstances.'" *Smart Mortgage Ctrs., Inc. v. Noe*, No. 21 C 3606, 2022 WL

---

[6] The Court notes that Plaintiffs' entire argument in response to Kingsbridge's motion for summary judgment on the copyright infringement claim is a chart in table form, which references a response to a statement of fact, which in turn states that the similarities are "undeniable." Setting aside the other deficiencies in Plaintiffs' cursory response, which is devoid of any application of the law to the facts, a party's response to a statement of fact cannot contain legal argument. *See Schmelzer v. Animal Wellness Ctr. of Monee, LLC*, No. 18 C 01253, 2022 WL 3026911, at *3 (N.D. Ill. Aug. 1, 2022) ("Defendants are correct that '[l]egal arguments do not go in the separate statements of fact.'") (citation omitted).

[7] The "analysis under [ITSA] is largely identical to that under DTSA." *Medcor, Inc. v. Garcia*, No. 21 CV 2164, 2022 WL 124163, at *7 (N.D. Ill. Jan. 13, 2022).

[8] While Defendants reference "other alleged trade secrets" in their motion for summary judgment, Plaintiffs refer only to the IQ Connect software. Accordingly, the Court addresses only the purported misappropriation of the IQ Connect software.

5

832663, at *6 (N.D. Ill. Mar. 21, 2022) (citations omitted). Defendants do not engage in an analysis of "all the surrounding circumstances" and note only that Got Docs did not preserve a copy of the IQ Connect software application when Got Docs ceased operations, Got Docs does not currently have a copy of the IQ Connect software, and Got Docs did not produce a copy of the IQ Connect software application during discovery. (Defs.' Mem. Supp. Summ. J., Dkt. # 274, at 7 n.5.) Plaintiffs concede that they do not have a copy of the IQ Connect software, asserting that its absence is "due to the very misdeeds at issue—Defendants' misappropriation of IQ Connect." (Pls.' Resp., Dkt. # 284, at 7.) While it is undisputed that Plaintiffs do not possess a copy of the IQ Logic software application, Defendants point to no authority that precludes a DTSA claim due to the party's lack of possession of the alleged trade secret. Because Defendants bring no other challenge to whether the alleged trade secrets qualify as such, the Court assumes for purposes of this motion that the IQ Connect software qualifies as a trade secret under DTSA and ITSA.

Under the DTSA, "[m]isappropriation happens when a person acquires a trade secret by improper means or discloses or uses a trade secret without consent." *Medcor,* 2022 WL 124163, at *7 (citation omitted). Defendants assert that Plaintiffs cannot prove that Defendants misappropriated Plaintiffs' IQ Connect software application. According to Kingsbridge, it has not used IQ Connect software "in any manner" and there is no evidence that Defendants "have used, disclosed, or acquired" IQ Connect. Plaintiffs respond that there is "ample evidence [that] Defendants misappropriated and extensively used IQ Connect," including that Defendants: (1) took over Got Docs' Amazon Web Services account in late 2017; (2) "lured" Got Docs' employees who had access to the IQ Connect source codes; and (3) "sought out and worked with the same software developers Got Docs used to work on IQ Connect." (Pls.' Resp., Dkt. # 284, at 7-8.) Specifically, Plaintiffs point to a report Mendicina and Hiangkie Han, Mendicina's colleague, drafted for Kingsbridge's co-CEO and General Counsel, which stated:

> Amazon Web is currently hosting IQ Logic's IQ Connect software and IQ Connect webpage. On December 31, the account will be shut down and terminated for lack of payment. It will cost $135 to keep the site activated. A legal question is, should we pay the $135 in order to keep the source codes and let the webpage expire, or do we download the source code[] and put it on our own Amazon web account?

(Golden Am. Decl., Dkt. # 298, Ex. E, at 45.) Defendants assert that the fact that they "could have" misappropriated IQ Connect is not sufficient evidence that they did. The quoted excerpt from the report, however, creates a genuine issue of material fact as to whether Defendants misappropriated the IQ Connect software.

The final element of the claim for misappropriation of trade secrets is that the alleged misappropriation damaged the trade secret's owner. Defendants assert that Plaintiffs' damages expert improperly grouped categories of damages rather than identifying damages for each specific claim. In his Summary of Opinions, Plaintiffs' expert states as follows:

> I understand that the Defendants' actions[,] which include providing false statements to customers under contracts with IQ Logic, misappropriating IQ Logic's proprietary software, website and

6

> telephone number, interfering with IQ Logic's customer and supplier relationships [with] whom IQ Logic had a reasonable expectation of entering into relationships for the purchase of its MDS products and services, Mendicina's breaches of fiduciary duty, non-competition, non-disclosure and non-solicitation clauses in his employment agreement, and Mendicina's breach of the confidentiality clause within the IQ Logic Operating Agreement led to the destruction of IQ Logic's business. I have calculated damages as the fair market value of IQ Logic at August 31, 2017, ("Valuation Date") assuming that the Defendants' actions did not occur. The fair market value at the Valuation Date is $15,610.436[.00].

(Kleinrichert Report, Defs.' Ex. 8, at 17-18.)

As a second aspect of damages, Kleinrichert stated as follows:

> Plaintiffs have alleged that "Kingsbridge has been unjustly enriched by retaining profits from sales of Kingsbridge Technologies' MDS products and services, which use, and were developed using IQ Logic's confidential and proprietary information." As a result, Plaintiffs seek to disgorge "all monies, profits and gains it has obtained or will unjustly obtain in the future at the expense of IQ Logic." I have calculated the disgorgement amount as $3,188,298.[00].

(*Id.* at 18.) Plaintiffs concede that their expert "calculated Got Docs' damages as a whole, including but not limited to Kingsbridge's theft of Got Docs' trade secrets, website, and interference with Got Docs' contractual relationships with its customers and suppliers." (Pls.' Resp. Defs.' Stmt. Material Fact, Dkt. # 283, ¶ 76.)

The case relied on by Defendants, *Mission Measurement Corporation v. Blackbaud, Inc.*, No. 16 C 6003, 2019 WL 4958236, at *3 (N.D. Ill. Oct. 8, 2019), is distinguishable because in that case, Plaintiff admitted that it was "'[u]ndisputed that [it] ha[d] not disclosed a calculation of [tortious interference] damages.'" *Id.* at *3 (citation omitted). Here, however, Plaintiffs have disclosed damages for the purported "theft" of Got Docs' business, which includes the misappropriation of trade secrets. While Defendants properly characterize Plaintiffs' strategy as risky because the expert's damages calculations may be inadmissible if Plaintiffs do not succeed on every claim, *see, e.g.*, *Vertellus Holdings, LLC v. W.R. Grace & Co.-Conn.*, No. CV SAG-18-3298, 2021 WL 3883597, at *16 (D. Md. Aug. 12, 2021) ("Other [c]ourts have cautioned that in quantifying damages in one lump sum for all claims, plaintiffs assume risk that the damages calculation could be excluded in its entirety if they are unsuccessful in proving all of their claims."), it does not mean that Plaintiffs have failed to create a genuine issue of material fact that they suffered damages as a result of Defendants' alleged trade-secret misappropriation.[9]

---

[9] Defendants raise the same damages argument with respect to the other counts. For the reasons stated here, the Court denies this basis for relief on all counts.

7

Breach of and Tortious Interference with Mendicina's Employment Agreement and/or the Operating Agreement (Counts 3, 4, 5, and 6)

Plaintiffs allege that Mendicina breached restrictive covenants (non-competition, non-disclosure, and non-solicitation) in his employment agreement and/or operating agreement with Got Docs after terminating his employment with Got Docs. Plaintiffs further allege that Kingsbridge tortiously interfered with those agreements. Defendants contend that the restrictive covenants are unenforceable restraints of trade under California Business and Professional Code § 16600,[10] which states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

The relevant portion of the non-solicitation provision states:

> Employee hereby agrees that [until November 18, 2024], Employee will not knowingly in any geographic area in which the Employer conducts the Business, either directly or indirectly, without the written consent of the Employer, . . . (b) employ or solicit to employ in a business other than that of Employer, or facilitate a third party to so employ or solicit to employ, any employees of the employer.

(2d Am. Compl., Ex. B, Dkt. # 63-2, § 5.)

With respect to this provision, Defendants point to no evidence that preventing Mendicina from soliciting Plaintiffs' employees would restrain Mendicina from engaging in a lawful profession, trade, or business of any kind. *But c.f. AMN Healthcare, Inc. v. Aya Healthcare Svcs., Inc.*, 28 Cal. App. 5th 923, 936 (2018) ("[T]he broadly worded [employee non-solicitation] provision prevents individual defendants, for a period of at least one year after termination of employment with AMN, from either 'directly or indirectly' soliciting or recruiting, or causing others to solicit or induce, any employee of AMN," which "clearly restrained individual defendants from practicing with Aya their chosen profession — recruiting travel nurses on 13-week assignments with AMN."). Thus, on the current record, the Court does not conclude that the employee non-solicitation provision constitutes an impermissible restraint of trade under § 16600 as a matter of law. *See Arthur J. Gallagher & Co. v. Lang*, No. C 14-0909 CW, 2014 WL 2195062, at *4 (N.D. Cal. May 23, 2014) ("Although California courts recognize that an employer may not prohibit its former employees from *hiring* the employer's current employees, an employer may lawfully prohibit its former employees from actively *recruiting* or *soliciting* its current employees.") (emphasis in original).

Defendants assert that even if the employee non-solicitation provision is not void pursuant to California law, Plaintiffs point to no evidence that Mendicina solicited Plaintiffs' then-current

---

[10] As stated earlier, the Employment Agreement provides that California law governs. (2d Am. Compl., Dkt. # 63, Ex. A, § 15.) The Operating Agreement provides that it is governed by Nevada law, (*id*., § 11.4), so any argument based on California law is inapplicable to the Operating Agreement.

employees.[11] Plaintiffs contend, however, that "Mendicina's communications plainly demonstrate that he solicited [Got Docs' salespeople] and that it was his ultimate plan to do so." (Pls.' Resp. Defs.' Stmt. Facts, Dkt. # 283, ¶ 55.) Plaintiffs point to several emails in which Mendicina refers to hiring salespeople from Got Docs. (*Id.*) (citing numerous examples). For example, in an August 16, 2017 email from Mendicina to Dan Flagstad, co-CEO at Kingsbridge Holdings, LLC, Mendicina stated, among other things, "Please have HR prepare the offer letter for Hiangkie Han [a Got Docs colleague], as my director of Enterprise Solutions, [c]ompensation of 10K per month, (5K base salary 5K draw against commission) and your standard benefits." (Pls.' Ex. 13, Dkt. # 287, at 4.) For their part, Defendants submit declarations from Mendicina, Skogerson, and Han in which they attest that the Got Docs employees reached out to Mendicina and Kingsbridge. (Defs.' Ex. 1, 2d Mendicina Decl., ¶ 36; Defs.' Ex. 5, Skogerson Dep. 63:9-67:14; Defs.' Ex. 6, Han Dep. 54:17-55:1.) Viewing the facts in a light most favorable to Plaintiffs, the Court concludes that a genuine issue of material facts exists as to whether Mendicina breached the non-solicitation provision of his employment agreement.

Non-disclosure agreements are enforceable to protect trade secrets. *See Robert Half Int'l, Inc. v. Murray*, No. CV F-07-0799 LJOSMS, 2008 WL 2625857, at *11 (E.D. Cal. June 25, 2008) (The "nondisclosure provision[] [is] not invalid under section 16600 because [it] seek[s] to protect trade secrets and confidential information."). Thus, Defendants' contention that the non-disclosure provision is invalid as a matter of law lacks merit.

With respect to the non-competition provision, the specific language of which is immaterial, the California Supreme Court has held that "section 16600 prohibits employee noncompetition agreements unless the agreement falls within a statutory exception." *Edwards v. Arthur Andersen LLP*, 189 P.3d 285 (Cal. 2008). Plaintiffs assert that the following exception applies to validate the non-compete:

> Any person who sells the goodwill of a business, or any owner of a business entity selling or otherwise disposing of all of his or her ownership interest in the business entity, or any owner of a business entity that sells (a) all or substantially all of its operating assets together with the goodwill of the business entity, (b) all or substantially all of the operating assets of a division or a subsidiary of the business entity together with the goodwill of that division or subsidiary, or (c) all of the ownership interest of any subsidiary, may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold . . . .

Cal. Bus. & Prof. Code § 16601. According to Plaintiffs, Mendicina agreed to the non-compete provision in conjunction with the sale of the goodwill, ownership, and/or operating assets of the business when IQL-RIGGIG (Riveria MCS, LLC) purchased ownership interests in Got Docs from

---

[11] Plaintiffs do not address this argument in their response. Nevertheless, in their brief, Defendants expressly refer to Plaintiffs' response to Defendants' statement of fact 55, which addresses this issue. Accordingly, the Court considers the argument rather than finding that Plaintiffs have waived it.

Lotus Innovations Fund, LP pursuant to a Unit Purchase Agreement ("UPA") dated November 18, 2015. (2d Am. Compl., Ex. B, Dkt. # 63-2, at 1.) Mendicina, however, was not a party to the UPA. (Pls.' Ex. 18, Dkt. # 287, at Page 71 of 191.) Thus, the statutory exception under § 16601 is not applicable and the non-compete is invalid. Accordingly, the Court grants summary judgment to Defendants with respect to Plaintiffs' breach of contract claim as it relates to the non-competition provision.

Finally, Mendicina contends that Got Docs cannot enforce the restrictive covenant because it was the first to breach its agreements with Mendicina when it failed to pay Mendicina his salary. Plaintiffs assert that Mendicina breached the Employment Agreement first when he embezzled over $50,000.00 from Got Docs between January and August 2017, and when he traveled (or attempted to travel) from California to Chicago on several occasions in June and July 2017 "to meet with Kingsbridge to plan Defendants' coup." (Pls.' Resp., Dkt. # 284, at 5.) Because Mendicina denies the embezzlement and the allegations of planning a "coup," the Court finds a genuine issue of material fact exists as to which party, if any, breached the employment agreement first.

<u>Tortious Interference with Contract (Count 1), Tortious Interference with Prospective Economic Advantage (Count 2), Unfair Competition under the Lanham Act (Count 7) and Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Counts 8 and 9)</u>[12]

It is worth noting at the outset that neither party sets forth the elements of these claims in their briefs, so the Court does so here. "Under Illinois law, a tortious interference with contract claim has the following elements: (1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Nat'l Experiential, LLC v. City of Chi.*, No. 21 C 810, 2022 WL 704781, at *11 (N.D. Ill. Mar. 9, 2022) (citation and internal quotation marks omitted). "[T]he elements of a tortious interference with prospective economic advantage claim consist of the following: (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damages to the plaintiff resulting from the defendant's interference." *Pittsfield Dev., LLC v. Lynd*, No. 19 C 01321, 2020 WL 6701104, at *4 (N.D. Ill. Nov. 13, 2020) (citation and internal quotation marks omitted). "To state a claim of unfair competition under the Lanham Act, Plaintiffs must allege that (1) their mark is protectable, and (2) Defendants' use of the mark is likely to cause confusion among consumers." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 917 (N.D. Ill. 2007). "In Illinois, courts resolve deceptive practices claims according to the principles set forth in the Lanham Act." *Long Grove Investments, LLC v. Baldi Candy Co.*, 397 F. Supp. 3d 1190, 1198 (N.D. Ill. 2019). The parties appear to discuss these claims together, so the Court does as well.

---

[12] It is not always clear which counts the parties intend to address together. The Court has done its best to mimic the structure of the parties' arguments and the counts they intend to address jointly.

Defendants contend that Plaintiffs have no evidence that Kingsbridge induced any of Got Docs' customers to stop doing business with Got Docs, made false statements about Got Docs to any Got Docs' customers, or misappropriated its website and telephone numbers, as Plaintiffs allege in their second amended complaint. According to Defendants, Got Docs breached or terminated its contracts with its customers and prospective business relationships by November 17, 2017, when it is undisputed that Got Docs was winding down its business operations, had stopped paying Xerox, and was not providing service and supplies to Got Docs' customers.

Plaintiffs, however, point to numerous emails that they contend are sufficient to ward off summary judgment as to the tortious interference claims and the state and federal unfair competition claims. For instance, in a September 25, 2017 email from Han to one of Got Docs' customers, Han (formerly employed by Got Docs) directs the customer to contact Xerox and make it "aware of certain business practices used by one of your resellers IQ Logic, d/b/a, [G]ot [D]ocs, LLC." Specifically, Han proposes language the customer can use in complaining to Xerox that while Got Docs had agreed to buy out the customer's lease on its Kyocera equipment and replace it with Xerox, Got Docs "continues to use stalling tactics and I have not seen a penny of the monthly [buyout] payment or payment in full." (Pls.' Ex. 2, Han Dep. Ex. 34, Dkt. # 285, at 286.) In another email dated May 5, 2017 (more than three months prior to Mendicina's resignation from Got Docs), Mendicina writes to Dan Flagstad at Kingsbridge: "Hope you are enjoying your vacation. I have spoken with my client and they are willing to cancel current lease and re[-]sign a new lease with [K]ingsbridge. Corelogic does 3 million in leases with IQ [L]ogic yearly. I think this would be a good account[] for you." (Pls.' Ex. 16, Dkt. # 287, at Page 52 of 191, K006971.) In a September 13, 2017 email, Kingsbridge's Xerox representative writes to colleagues at Xerox that "[w]e quickly need a point person to demonstrate to Frank [Mendicina] the tool suite for all XPPS tools. . . . This is time-sensitive because these deals are already well underway . . . and they were originally pitched using his former and very sophisticated software . . . and now he needs to rely on our tools and needs to articulate the differences vs his former tools suite, to his C-level customer audience." (*Id*., at Page 55 of 191, K010430.)

While Defendants generally challenge Plaintiffs' evidence, they fail to perform a detailed analysis of the law as applied to the specific emails at hand, stating only that "the various Kingsbridge emails and deposition testimony that Got Docs cites in a haphazard manner do not establish the elements of a tortious interference or unfair competition claim as to any customers." (Defs.' Reply, Dkt. # 288, at 6.) The Court will not do the analysis for Defendants. From what the Court can discern, at least some of the communications cited by Plaintiffs in their response to Defendants' statement of fact 64 provide a sufficient basis to overcome summary judgment on the tortious interference and unfair competition claims.

Conversion (Count 13)[13]

Got Docs alleges that Defendants converted Got Docs' website, digitized documents, software, coding, customer contracts, customer lists, pricing, business plans, and strategic plans,

---

[13] On October 7, 2021, the Court granted Kingsbridge's motion to dismiss the conversion claim as it relates to Riveria. (Dkt. # 268.) Accordingly, the Court references only Got Docs in discussing this claim.

11

among other things.[14] Defendants argue that the conversion claim is barred as preempted by the California Uniform Trade Secrets Act ("CUTSA"). *See Noble v. Dorcy, Inc.*, No. 219CV08646ODWJPRX, 2021 WL 2714595, at *3 (C.D. Cal. July 1, 2021) ("The CUTSA's preemptive sweep is broad—it supersedes all claims 'based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret.'") (citation omitted). To the extent the conversion claim is based on trade secret and confidential information, the motion for summary judgment is granted. For the same reasons discussed in the next two sections, if Got Docs' evidence in support of the claim does not involve the use of trade secrets or protected information, it is not preempted.

Regarding Defendants' assertion that Got Docs has no evidence of conversion, Got Docs points to evidence in support of its claim. (Pls.' Resp., Dkt. # 284, at 11-12.) Therefore, the Court denies summary judgment on the conversion claim, unless preemption applies.

<u>Unjust Enrichment (Count 14)</u>[15]

Without discussing specifics, Defendants assert that the unjust enrichment claim is entirely premised on the alleged misuse of Got Docs' trade secrets and/or proprietary information and is thus preempted by ITSA. ITSA is "intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8(a). "At bottom, all common law claims based on misappropriation of trade secrets were codified, and preempted, by ITSA." *ExactLogix, Inc. v. JobProgress, LLC*, 508 F. Supp. 3d 254, 268 (N.D. Ill. 2020). "This extends to confidential information, even where such confidential information does not actually fall within ITSA's statutory definition of a trade secret." *Id.*

As noted by Defendants, Got Docs' unjust enrichment allegations in its second amended complaint rely solely on Kingsbridge's alleged improper use of Got Docs' confidential and proprietary information:

> 221. Kingsbridge continues to improperly and unjustly retain IQ Logic's *confidential and proprietary information*, including, but not limited to, software, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs and codes, both tangible and intangible and

---

[14] Got Docs states that its conversion claim sounds under California law. (Pls.' Resp., Dkt. # 284, at 13.)

[15] Neither side states the elements of an unjust enrichment claim. In Illinois, "[t]o state an unjust enrichment claim, [the plaintiff] must allege that [the defendant] has 'unjustly retained a benefit to [the plaintiff's] detriment, and that [the defendant's] retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Buschauer v. Columbia Coll. Chi.*, 579 F. Supp. 3d 1045, 1049 (N.D. Ill. 2022) (citation omitted and certain alterations in original).

> stored, compiled and memorialized physically, electronically and graphically, without IQ Logic's express or implied consent.
>
> 222. Kingsbridge has unjustly retained benefits to IQ Logic's detriment, and Kingsbridge's retention thereof violates fundamental principles of justice, equity, and good conscience. Kingsbridge has been unjustly enriched by retaining profits gained from sales of Kingsbridge Technologies' *MDS products and services, which use, and were developed using, IQ Logic's confidential and proprietary information.*
>
> 223. IQ Logic has been deprived of attribution and royalties for *products and services it developed and which use IQ Logic's proprietary information.*

(2d Am. Compl., Dkt. # 63, at 46) (emphasis added).

In its response brief, however, Got Docs, again without discussing the exact nuances of its unjust enrichment claim, states that the claim is based on the "unauthorized use of non-trade secret information for their own benefit, solicitation of Got Docs' customers without use of trade secrets, illegal file access—including transmittal to Defendants' counsel, failure to pay royalties or provide attribution, [and the] uncompensated use of Got Docs' employees to do business for the Defendants while employed by Got Docs." (Pls.' Resp., Dkt. # 284, at 16.) The only record citation provided by Got Docs in support is to its responses to Defendants' statements of material facts at paragraphs 42, 43, 55, and 64, so the Court analyzes these paragraphs.

Both paragraphs 42 and 43 expressly discuss trade secret and proprietary information, so neither of these responses support Got Docs' assertion that the unjust enrichment count is not preempted by ITSA. Paragraphs 55 and 64 of Defendants' statements of fact could allow for application of the preemption doctrine. Defendants' statement of fact 55 states: "Mendicina did not solicit salespeople to leave Got Docs; instead, these salespeople reached out to Mendicina and asked him to employ them at Kingsbridge." (Defs.' Stmt. Fact, Dkt. # 276, ¶ 55.) Got Docs disputes this statement, contending that "Mendicina's communications plainly demonstrate that he solicited these individuals and that it was his ultimate plan to do so." (Pls.' Resp. Defs.' Stmt. Fact, Dkt. # 283, ¶ 55.) Got Docs' response further states that "based upon evidence documenting Mendicina's numerous visits with Kingsbridge prior to his resignation from Got Docs, Kingsbridge's knowledge of Mendicina's intent to solicit Got Docs' employees is apparent." (*Id.*) In the last statement cited by Got Docs, paragraph 64, Defendants state that "Got Docs' contracts and/or relationships with its customers and prospective customers effectively ended by the fourth quarter of 2017." (Defs.' Stmt. Fact, Dkt. # 276, ¶ 64.) Got Docs responds that the fact is "[u]ndisputed, except that the relationship ended due to Kingsbridge['s] interference with Got Docs' contracts and/or relationships with its customers and prospective customers." (Pls.' Resp., Defs.' Stmt. Fact, Dkt. # 283, ¶ 64). Assuming arguendo that Kingsbridge's knowledge of Mendicina's purported solicitation of Got Docs' employees or customers could satisfy a claim for unjust enrichment, the Court has no basis to determine whether the information allegedly used by the solicited employees constituted a trade secret or confidential or proprietary information.

Therefore, to the extent the claim is based on Kingsbridge's improper solicitation of employees or customers using trade secret or confidential information, it is preempted by ITSA.[16] If the evidence in support of the claim does not involve the use of trade secret or protected information,[17] it is not preempted.

Because the Court is denying in part Defendants' motion for summary judgment on this claim, Got Docs' assertion that the preemption defense is waived due to untimeliness is denied. Further, Defendants' fleeting assertion that Got Docs' unjust enrichment claim has no evidentiary support is denied.

<u>Breach of Fiduciary Duty against Mendicina (Count 15) and Breach of Fiduciary Duty against Kingsbridge (Count 16)</u>

Defendants argue that Mendicina owed no fiduciary duty as a manager/member of Got Docs because under Nevada law, managers or members do not owe fiduciary duties unless there is a valid operating agreement specifying those duties. Nev. Rev Stat. § 86.298. Plaintiffs point to § 8.3(b) of the Operating Agreement, which states as follows:

> Unless otherwise expressly provided herein, (i) whenever a conflict of interest exists or arises between Covered Persons, or (ii) whenever this Agreement or any other agreement contemplated herein provides that a Covered Person shall act in a manner that is, or provides terms that are, fair and reasonable to the Company or any Member, the Covered Person shall resolve such conflict of interest, taking such action or providing such terms, considering in each case, the relative interest of each party . . . .

(Operating Agreement, Dkt. # 63-1, § 8.3(b).) Notably, Defendants do not respond to this point in their reply. Summary judgment on this ground is denied.

Defendants next assert that Mendicina had no fiduciary duty to Got Docs after leaving Got Docs. (Mendicina Employment Agreement, Dkt. # 63-2, § 1, at 1) ("During the Employment Period, Employee shall have a fiduciary duty to the Employer . . . ."). Plaintiffs cite only to evidence implicating Mendicina's actions while he was an employee. (Pls.' Resp., Dkt. # 284, at 12) ("The Employment Agreement required Mendicina to 'act with the utmost care and loyalty' and 'devote his full time and best efforts to the business and welfare of the Employer' during employment, which he breached by, among other acts, embezzling over $50,000[.00] from Got Docs between January and August 2017, traveling to Chicago before his separation to plan Defendants' takeover, and sending Plaintiffs' proprietary materials to an entity he knew to be a

---

[16] If Got Docs has evidence relating to its unjust enrichment claim that does not implicate confidential or trade-secret information, Got Docs will be permitted to present it at trial absent some other reason the evidence is deemed inadmissible.

[17] For example, Got Docs cites to Kingsbridge's "use of Plaintiffs' [then-]current employees to market to prospective clients they intended to sign after moving to Kingsbridge," (Pls.' Resp., Dkt. # 284, at 12), which may or may not have involved the use of confidential information or trade secrets.

competitor.") Thus, the Court grants summary judgment to Defendants on the breach-of-fiduciary-duty count as to any conduct after Mendicina left Got Docs' employment.

Defendants again contend that the breach of fiduciary duty claims are preempted by ITSA, but for the same reason as above, to the extent Got Docs' evidence of a breach of fiduciary duty is not based on trade secrets or confidential information, Got Docs is not precluded from presenting that evidence at trial.

Civil Conspiracy (Count 17)

Defendants purport to move for summary judgment on the civil conspiracy claim because there are no underlying torts.[18] The Court has not granted Defendants' motion for summary judgment on all claims, so it cannot state as a matter of law that no underlying torts exist. Accordingly, the motion for summary judgment on Got Docs' civil conspiracy count is denied. *See Engel v. Buchan*, 791 F. Supp. 2d 604, 611 (N.D. Ill. 2011).

**Conclusion**

For the reasons stated herein, Defendants' motion for summary judgment is granted in part and denied in part.

Date: February 17, 2023

**Ronald A. Guzmán**
**United States District Judge**

---

[18] On October 7, 2021, the Court granted Kingsbridge's motion to dismiss the civil conspiracy claim as it relates to Riveria. (Dkt. # 268.) On November 23, 2021, Mendicina moved for judgment on the pleadings on the civil conspiracy claim. (Dkt. # 269.) Although the Court set a briefing schedule on the motion, (Dkt. # 270), no briefs were filed, so no ruling has issued.